1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| OEG INC.,<br><br>     Plaintiff,<br><br>  v.<br><br>GEORGE KORUM; RICHARD MORSE;<br>NICK KORUM; BRANDON GRIMES;<br>MSM SOLUTIONS, INC.; CHRISTENSON<br>ELECTRIC INC.; SONJA RHEAUME;<br>ANTHONY WALTER; BRIAN DUMAN,<br><br>     Defendants. | Case No. 3:24-cv-05694-TMC<br><br>ORDER GRANTING MOTION TO<br>REMAND |

## I.    INTRODUCTION

This matter comes before the Court on Plaintiff OEG's Motion to Remand and Defendants' Motion to Seal. Dkt. 20; Dkt. 24. The action began in state court, where Plaintiff OEG, an electrical company, sued Defendants, former OEG employees, for alleged theft of OEG's corporate property. The Defendant former OEG employees—George Korum, Richard Morse, Nick Korum, and Brandon Grimes—allegedly stole corporate property from OEG, with the aid of Defendants Christenson Electric ("Christenson"), Sonja Rheaume, Anthony Walter, and Brian Duman. The former OEG employees, while still working at OEG, created Defendant MSM Solutions (also known as K4 Electrical), a competitor to OEG. OEG asserts that the

ORDER GRANTING MOTION TO REMAND - 1

former employees stole confidential corporate information with the help of the Christenson Defendants to start the competing company. After OEG discovered the alleged theft, it sued the Defendants, alleging violations of Washington's Uniform Trade Secrets Act, RCW 19.108.010, et seq.; (2) breach of fiduciary duty; (3) intentional interference; (4) conversion; (5) replevin; (6) aiding and abetting breach of fiduciary duty; (7) breach of contract; (8) criminal profiteering; (9) use of proceeds of criminal profiteering; and (10) unjust enrichment.

Defendants removed the case from Washington state court. Defendants claim that this Court has federal subject matter jurisdiction over the case because it involves a federal question. Defendants argue that this Court has subject-matter jurisdiction under the doctrine of "complete preemption," a theory of federal jurisdiction that allows a defendant to remove a state-law claim to federal court when a federal statute so completely occupies an area of law that it displaces state-law claims. Under the complete preemption doctrine, what seems to be a state-law claim is recharacterized as a federal claim, creating federal-question jurisdiction.

On September 23, 2024, Plaintiff OEG moved to remand. Dkt. 20. Defendants responded on October 15, 2024. Dkt. 22. Plaintiffs replied on October 21, 2024. Dkt. 29. Defendants filed a related motion to seal on October 15, 2024. Dkt. 24. The Plaintiff responded on October 30, 2024. Dkt. 31. The court has considered the briefing filed in support of and in opposition to the motions, oral argument, and the file herein. For the reasons below, the Court GRANTS the Motion to Remand. The Court also GRANTS Defendants' Motion to Seal.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff OEG is an electrical contracting company based in the Portland-Vancouver area. Dkt. 1-2 ¶¶ 1, 16. Defendants George "Mick" Korum, Rick Morse, Nick Korum, and Robert Michael are all former OEG employees ("Former OEG Employees"). *Id.* ¶¶ 18–21. They each worked for Integrated Systems Group (ISG), an internal division of OEG that manufactures

electrical control systems and low-voltage electrical control panels. *Id.* ¶ 17–22. ISG also designs and installs systems for customers in the health care, government, education, and technology industries. *Id.* ¶ 17.

OEG claims that, in late 2022 or early 2023, Mick Korum began discussions with executives at Defendant Christenson, a competitor of OEG, about a plan for him to leave OEG and start a company to compete with ISG. *Id.* ¶ 44. Mick Korum would begin this new venture, MSM solutions, doing business as K4 Electrical & Control Solutions, upon leaving OEG-ISG. *Id.* at 3, ¶ 53.

After this agreement, Mick Korum allegedly began misusing his OEG computer and abusing his access to OEG's confidential information. For example, OEG claims that on February 14, 2023, Mick Korum emailed a real estate company about leasing space in Clark County from his work account. *Id.* ¶ 45. A few days later, Mick Korum used an OEG computer and email account to send his personal email account confidential information. *Id.* ¶ 46. The email included an attachment with "detailed start-up costs, such as employee salaries, leasing a location, utilities, maintenance, insurance, and material costs, for creating a low-voltage panel manufacturing facility to compete with OEG." *Id.* ¶ 47. On May 2, 2023, he used an OEG computer and email account to send ISG "marketing data to Mick.k4@outlook.com." *Id.* ¶ 54. Similarly, on June 1, 2023, Mick Korum used an OEG computer and email account to send confidential information relating to "the Alpha Client" to his K4 email address. *Id.* ¶ 58. In total, he sent about 30 emails from his OEG email to his K4 email. *Id.* ¶ 60.

Mick Korum recruited the other Former OEG Employees to join him. *Id.* ¶¶ 65–66. The entire group planned to leave OEG in July 2023. *Id.* None disclosed their position or affiliation with K4 to OEG. *Id.* ¶¶ 61–64. They each tendered resignation letters in late June 2023. *Id.* ¶¶ 65–66. Their final day was set for July 14. *Id.* ¶ 66, 70. On July 11, 2023, Mick Korum used

his OEG email address one last time: to email representatives of "the Alpha Client" informing them of his departure and explaining that he was "excited to inform you that I am starting a new business with a group of the (best of the best) in the electrical and control panel industry[.]" *Id.* ¶ 67. He copied his K4 Electrical email and his personal email address. *Id.* He also contacted other clients. *Id.* ¶ 68. On July 13, Nick Korum printed copies of "a significant amount of OEG's confidential information[.]" *Id.* ¶ 69.

As soon as they left, Mick Korum, Nick Korum, Rick Morse, and Robert Michael began working for K4 Electrical. *Id.* ¶ 71. Mick is the President and CEO, Rick is the Vice President, Nick is the Senior Project Manager, and Robert is the Director of Operations. *Id.* ¶ 72. OEG alleges that Christenson is "heavily invested into K4 electrical[.]" *Id.* ¶ 73. OEG alleges that executives at Christenson—Defendants Sonja Rheaume, Mark Walter, and Brian Duman— assisted the Former OEG Employees and K4 Electrical. *Id.* ¶ 73.

OEG alleges that, before leaving the company, Defendants Mick Korum, Rick Morse, and Nick Korum allegedly stole tens of thousands of files from OEG's computer system. *Id.* ¶¶ 46, 58, 60, 69, 75–88. According to OEG's First Amended Complaint, the Defendants stole "files, records, data, information, and trade secrets[.]" *Id.* ¶ 77. The purportedly stolen materials include, but are not limited to:

a. Internal ISG financial data;
b. ISG employee wage data and additional employee information, including but not limited to, employee improvement plans, disciplinary letters, and letters of recommendation;
c. Customer lists and contact information;
d. Correspondence with customers;
e. Lists of current ISG jobs in production;
f. Lists of guests invited to ISG's "open house";
g. Profit margin calculators;
h. Confidentiality, Nondisclosure, and Nonuse Agreements;
i. Internal Procurement Department Business Plans;
j. Minutes for internal ISG meetings;

k.  Original equipment manufacturer internal sale prices;

l.  Current lists for vendor prices;

m.  Hundreds of documents relating to marketing materials;

n.  Potential customer leads;

o.  Internal processes, procedures, verification checklists, and testing manuals developed by ISG relating to testing components relating to its electrical business;

p.  Internal administration manuals developed by ISG, including but not limited to a buying process guide, safety procedures, maintenance inspection procedures, training materials, shipping handbooks, production workflows, commissioning procedures, and quality assurance procedures;

q.  Patterns and drawings relating to low-voltage electrical panels and their components;

r.  Thousands of documents relating to detailed customer data, including pricing requirements, and preferences and sensitivities, as well as detailed plans, patterns, drawings, diagrams, templates, and reference and testing documents relating to ISG's past completed contractual assignments, and contact information;

s.  CAD drawings;

t.  Customer data relating to ISG's contractual bids;

u.  Passwords to ISG accounts;

v.  Major purchase orders containing price data; w. Detailed product data related to components used by ISG in its production efforts; and

w.  Detailed information relating to Underwriters Laboratories ("UL") seals for industrial control panels, including requirement decisions, variance conflict issues, marking directives, trainings, inspections, follow up inspection instructions, and other information.

*Id.* ¶ 77–78. OEG alleges that Defendants stole the files by emailing them, downloading them to an external USB hard drive, and uploading them to a DropBox account. *Id.* ¶ 46–54, 76, 87. OEG further alleges that Defendant Mick Korum stole six laptops purchased with OEG funds. *Id.* ¶¶ 96–98.

OEG further alleges that the Former OEG Employees kept stealing from OEG even after they had left the company. *Id.* ¶ 89. In late August, they contacted Brandon Grimes, who still worked at OEG. *Id.* They then had Grimes use SD cards to access OEG's files. *Id.* He allegedly stole an additional 8,000 files before OEG realized and fired Grimes. *Id.*; Dkt. 20 at 12. Grimes began working at K4 soon after. Dkt. 20 at 12.

OEG filed its original complaint in Washington State Superior Court on October 2, 2023. Dkt. 1-1. The complaint named only Morse and Korum as Defendants. *Id.* at 1. The complaint

ORDER GRANTING MOTION TO REMAND - 5

asserted six causes of action: (1) a violation of Washington's Uniform Trade Secrets Act; (2) breach of fiduciary duty; (3) intentional interference; (4) conversion; (5) replevin "as to Laptop Computers"; and (6) replevin as to "the confidential information, including trade secrets, appropriated by [the Original] Defendants." Dkt. 1 at 2.

On August 21, 2024, OEG filed its First Amended Complaint ("FAC"). Dkt. 1-2. Beyond adding additional Defendants, the FAC added claims for aiding and abetting breach of fiduciary duty, breach of contract, "Criminal Profiteering," "Use of Proceeds of Criminal Profiteering," and unjust enrichment. *Id*. at 28, 32–42. Two days later, Defendants filed a notice of removal. *See generally* Dkt. 1; Dkt. 1-3. They argued that this Court has subject matter jurisdiction over the case because it involves a federal question. Dkt. 1 at 2. The Defendants raised the issue of complete preemption, arguing that: "This case involves a federal question because, under the Copyright Act of 1976 and via the doctrine of complete preemption, OEG's claims themselves implicate a federal question sufficient to confer subject matter jurisdiction." *Id.* at 2–3.

The case was removed to this Court. On September 23, 2024, Plaintiff OEG moved to remand. Dkt. 20. Defendants responded on October 15, 2024. Dkt. 22. Plaintiffs replied on October 21, 2024. Dkt. 29. Defendants filed a related Motion to Seal on October 15, 2024. Dkt. 24. The Plaintiff responded on October 30, 2024. Dkt. 31. The Court held oral argument on January 23, 2025. The Court has reviewed the briefing for each of these motions. The motions are ripe for the Court's consideration.

### III.    LEGAL STANDARD

An action brought in state court is removable to federal district court only if the federal court has original subject matter jurisdiction over the action. *See* 28 U.S.C. § 1441. "The threshold requirement for removal . . . is a finding that the complaint contains a cause of action that is within the original jurisdiction of the district court." *Toumajian v. Frailey*, 135 F.3d 648,

653 (9th Cir. 1998). A party may claim that a federal court has subject-matter jurisdiction based on either diversity or a federal question. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009). For the latter, the question turns on whether the complaint contained a claim that "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Federal question jurisdiction arises only if the complaint "affirmatively allege[s] a federal claim." *Retail Prop. Tr. v. United Broth. of Carpenters & Joiners of Am.*, 768 F.3d 938, 947 (9th Cir. 2014) (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003)). It is a fundamental principle of jurisdiction that the plaintiff is the "master of the claim." *Karambelas v. Hughes Aircraft Co.*, 992 F.2d 971, 973 (9th Cir. 1993) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). Thus a "case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption." *Caterpillar*, 482 U.S. at 393.

But the Supreme Court has created an exception: the complete preemption doctrine. *See Caterpillar*, 482 U.S. at 393 ("There does exist, however, an 'independent corollary' to the well-pleaded complaint rule, . . . known as the 'complete pre-emption' doctrine"). Complete preemption applies when "a federal statute's preemptive force is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim" so that "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 748 (9th Cir. 2022), *cert. denied* sub nom. *Chevron Corp. v. San Mateo Cnty., California*, 143 S. Ct. 1797, 215 L. Ed. 2d 678 (2023) (quoting *Caterpillar*, 482 U.S. at 393); *see also Mattel, Inc. v. Bryant*, 441 F. Supp. 2d 1081, 1092 (C.D. Cal. 2005), *aff'd*, 446 F.3d 1011 (9th Cir. 2006) ("The Supreme Court has concluded that the preemptive force of some statutes is so strong that they completely preempt an area of state law. In such cases, any claim purportedly based on that

preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law.") (cleaned up).

In such a case, "even a well-pled state law complaint may be removed to federal court." *Mattel*, 441 F. Supp. 2d at 1092. Once an area of state law has been completely preempted, "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393 (citing *Franchise Tax Bd. v. Construction Laborers Vacation Tr.*, 463 U.S. 1, 24 (1983)). Because the case arises under federal law, the court has federal question jurisdiction. *Id.*

But courts are cautioned that complete preemption "is not to be confused with ordinary preemption doctrine (although it is related to preemption law)." *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1107 n. 7 (9th Cir. 2000). Despite its name, the "doctrine does not abrogate the standard rule that a defense of preemption does not create federal question jurisdiction." *Id.* "The presence of a federal question . . . in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule—that the plaintiff is the master of the complaint." *Caterpillar*, 482 U.S. at 398–99.

## IV.    DISCUSSION

### A.    The complete preemption doctrine applies to the Copyright Act.

As a threshold matter, the Court must determine whether the complete preemption doctrine applies to the Copyright Act. Complete preemption applies when Congress "(1) intended to displace a state-law cause of action, and (2) provided a substitute cause of action." *Cnty. of San Mateo*, 32 F.4th at 748 (quoting *City of Oakland v. BP PLC*, 969 F.3d 895, 906 (9th Cir. 2020)). As OEG points out, neither the Supreme Court nor the Ninth Circuit has addressed this question. Dkt. 20 at 15. But the Second, Fourth, Fifth, and Sixth Circuits have all held that the complete-preemption doctrine applies to the Copyright Act. *Levy Prod. Grp., LLC*

*v. R&R Partners, Inc.*, 658 F. Supp. 3d 901, 907 (D. Nev. 2023) (collecting cases). And several district courts in the Ninth Circuit have agreed. *See, e.g.*, *Mattel, Inc.*, 441 F. Supp. 2d at 1092–93 ("The Copyright Act has complete preemptive force.") (collecting cases).

In *Worth v. Universal Pictures, Inc.*, the court found "two reasons to favor completely preempting and removing equivalent state law copyright claims." 5 F. Supp. 2d 816, 821 (C.D. Cal. 1997). First, the *Worth* court determined that Congress had intended "a broad grant of preemption" when it crafted the preemption language of the Copyright Act. *Id.* (quoting 17 U.S.C. § 301; H.R. Rep. No. 1476, 94th Cong., 2d Sess. 130 (1976)). Congress "expressly stated that 'the declaration of [federal preemption] is intended to be stated in the clearest and most unequivocal language possible . . . to foreclose any conceivable misinterpretation of its unqualified intention that Congress shall act preemptively[.]" *Id.* (quoting H.R. Rep. No. 1476).

Second, the *Worth* court noted that another provision of the statute gives district courts "exclusive jurisdiction with regards to copyright cases." *Id.* (quoting 28 U.S.C. § 1338(a)). The court explained that the delegation of exclusive jurisdiction to federal courts "lends itself in favor of an interpretation favoring removal of equivalent state copyright claims so that they may be litigated in federal court." *Id.*

More recently, courts in this district have conducted a similar analysis, reaching the same conclusion. In *Touch Networks, Inc. v. Gogi Design, LLC*, another court in this district found that "[t]he Copyright Act explicitly preempts state law and substitutes an exclusive federal remedy for 'all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright.'" No. C07-1686MJP, 2007 WL 9775634, at *2 (W.D. Wash. Dec. 20, 2007) (first citing 17 U.S.C. § 301(a); and then citing *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir. 2005)). And in *JZK, Inc. v. Weaver*, yet another explained, "[t]he intention of . . . the Copyright Act is to preempt and abolish any rights under the common law or

statutes of a state that are equivalent to copyright and that extend to works, within the scope of the federal copyright law." No. C06-5477 FDB, 2006 WL 2988172, at *3 (W.D. Wash. Oct. 17, 2006) (citing *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2005)).

Plaintiff argues that the Court should not find that complete preemption applies to the Copyright Act because there is "no controlling authority." Dkt. 20 at 15. While this may be true, the weight of authority—and the analysis conducted by that authority—leads the Court to conclude that the Copyright Act can trigger complete preemption. Congress plainly intended to preempt state rights "equivalent to copyright" and to provide exclusive jurisdiction over copyright questions to federal courts. *See, e.g.*, *Worth*, 5 F. Supp. 2d at 821; *Touch Networks*, 2007 WL 9775634, at *2.

**B.      Defendants bear the burden of proving federal jurisdiction.**

Before delving into the Copyright Act analysis, the Court must assess Defendants' burden. Federal courts are "courts of limited jurisdiction," holding "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Thus, the removing party bears the burden of proving federal jurisdiction, and federal courts strictly construe the removal statute against federal jurisdiction. *Hunter*, 582 F.3d at 1042. The removing party also bears the burden of proving federal jurisdiction in any opposition to a motion for remand. *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009). If there is any doubt as to the right to remove, the court should decline jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

Defendants argue for something very different. Dkt. 22 at 19–23. They claim the key question is "whether the party asserting federal subject matter jurisdiction has alleged facts that, if proved on the merits, would sustain the federal claim or defense." *Id.* at 19. Relying on two Fifth Circuit cases, they maintain that all Courts require at this stage is a "'plausible' showing . . .

that at least 'a portion' of the plaintiff's case will ultimately be preempted on the merits[.]" *Id.* at 23 (first quoting *GlobeRanger Corp. v. Software AG*, 691 F.3d 702, 710 (5th Cir. 2012); and then quoting *Spear Mktg., Inc. v. BancorpSouth Bank*, 844 F.3d 464, 472 (5th Cir. 2016)).

This theory is incorrect. First, the idea conflicts with the Supreme Court's holding in *Caterpillar*. In *Caterpillar*, the company argued that its employees' state-law complaint for breach of individual employment contracts and state-law claims were completely preempted by Section 301 of the Labor Management Relations Act ("LMRA"), which governed collective bargaining agreements. 482 U.S. at 388 The Court noted that, though the employees could have brought their claims under the LMRA, they chose instead to focus on the breach of individual contracts. *Id.* at 394–95. The complaint was thus not substantially dependent upon interpretation of the collective-bargaining agreement. *Id.* at 395.

The Court explained that, even though the company could still "dispute the continued legality . . . of a pre-existing individual employment contract because an employee has taken a position covered by a collective agreement, it may raise this question in state court." *Id.* at 397 (citing cases). The employer could still argue that the individual employment contract was preempted by the collective bargaining agreement and its related statute—a defensive preemption, not complete preemption, argument. *Id.* (citing *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959)).

Thus, the Court concluded, "[t]he fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted under the NLRA does not establish that they are removable to federal court." *Id.* at 398. In other words, just because a defendant has plausibly pled that they may successfully make a defensive preemption argument in state court does not mean that a case should be removed to federal court. *See id.*; *see also id.* at 398–99 ("[T]he presence of a federal question, . . . in a defensive argument does not overcome the paramount policies embodied in the

well-pleaded complaint rule—that the plaintiff is the master of the complaint, that a federal

question must appear on the face of the complaint, and that the plaintiff may, by eschewing

claims based on federal law, choose to have the cause heard in state court. . . . But a defendant

cannot, merely by injecting a federal question into an action that asserts what is plainly a state-

law claim, transform the action into one arising under federal law, thereby selecting the forum in

which the claim shall be litigated.").

Second, Defendant's theory misconstrues the Fifth Circuit's holdings in both

*GlobeRanger* and *Spear Marketing*. The court in *GlobeRanger* was asked to determine whether

the Plaintiff had plausibly pled more than the copying of a tangible medium of expression, thus

making its state-law claims—if proven true—outside the subject matter of copyright. 691 F.3d at

706 ("The real jurisdictional dispute in this case is whether the Copyright Act preempts any of

GlobeRanger's claims. If it does, then the district court properly exercised jurisdiction over this

case. Further, if it preempts all of them, then the case should be dismissed. If it plausibly

preempts some but not all, however, then the case can continue in federal court."). Thus, the

Fifth Circuit instead applied a plausibility analysis to determine whether the plaintiff had stated

any plausible claim outside the scope of the Copyright Act—not whether defensive preemption

might plausibly apply to a claim. *See id.* at 708. The lower court's "order of dismissal did not

determine whether the complaint plausibly asserted state-law claims upon which relief can be

granted." *Id.* at 710. But on review, the Fifth Circuit found that GlobeRanger had "pled factual

allegations that at least in part fall outside of the scope of copyright." *Id. Spear Marketing* goes

no further. 791 F.3d at 595.

Thus, the Court finds that the burden remains with Defendants to prove federal

jurisdiction, *Hunter*, 582 F.3d at 1042, including in their opposition to OEG's motion for

remand. *Moore-Thomas*, 553 F.3d at 1244. And they must satisfy this burden based on the scope

1   of Plaintiff's claims as Plaintiff—the master of its complaint—has chosen to plead them. As

2   explained below, this is a burden Defendants have failed to meet.

3   **C.      Plaintiff's claims are not preempted by the Copyright Act.**

4           The Copyright Act creates exclusive rights to protect a copyright holder against

5   infringement. *Touch Networks*, 2007 WL 9775634, at *3 (citing 17 U.S.C. § 106). These rights

6   include: (1) the right to reproduce the copyrighted work; (2) the right to prepare derivative works

7   based on the work; (3) the right to distribute copies of the work; and, with respect to certain

8   artistic works, (4) the right to perform the work publicly; and (5) the right to display the work

9   publicly. *Id.* (citing 17 U.S.C. § 106). "The statute specifically states that the Copyright Act does

10  not preempt state or common law rights which 'are not equivalent to any of the exclusive

11  rights . . . specified by section 106.'" *Id.* (quoting 17 U.S.C. § 301(b)(3)).

12          Thus, for there to be complete preemption under the Copyright Act, the state-law claim

13  must meet two requirements. *Mattel*, 441 F. Supp. 2d at 1092 (citations omitted). First, the "work

14  at issue" must come within the subject matter of copyright. *Id.* Second, the rights granted under

15  the state law must be "equivalent to [one] of the exclusive rights within the general scope of

16  copyright." *Id.* at 1092–93 (citations omitted). "To survive preemption, the state law claim must

17  include an 'extra element' that makes the right asserted qualitatively different from those

18  protected under the Copyright Act." *JZK, Inc.*, 2006 WL 2988172, at *3 (citing cases); *see also*

19  *Grosso v. Miramax Film Corp.*, 383 F.3d 965, 968 (9th Cir. 2004), opinion amended on denial of

20  reh'g, 400 F.3d 658 (9th Cir. 2005) ("To survive preemption, the state cause of action must

21  protect rights that are qualitatively different from the rights protected by copyright: the complaint

22  must allege an extra element that changes the nature of the action.") (cleaned up).

23

24

1    *1.     The work at issue is protected by the Copyright Act.*

2           The Copyright Act protects "original works of authorship expressed in any tangible

3    medium of expression, now known or later developed, from which they can be perceived,

4    reproduced, or otherwise communicated[.]" 17 U.S.C. § 102(a). Works of authorship include:

5    1) literary works; 2) musical works; 3) dramatic works; 4) pantomimes and choreographic

6    works; 5) pictorial, graphic, and sculptural works; 6) motion pictures and other audiovisual

7    works; 7) sound recordings; and 8) architectural works. *Id.* The owner of a copyright has the

8    exclusive right to reproduce, distribute, display, and license the copyrighted work. *Id.* § 106.

9           The Copyright Act requires that the work be "original." *Id.* § 102(a). A work is

10   considered original for purposes of copyright protection if the work is independently created by

11   the author and has some minimal level of creativity. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,

12   499 U.S. 340, 345–46 (1991). And copyright generally only protects original works that have

13   been put into some fixed medium. 17 U.S.C. § 102(a). This includes computer hard drives and

14   software. *See, e.g.*, *MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 518 (9th Cir. 1993).

15          Here, Defendants claim that the substance of OEG's seventh, ninth, tenth, and eleventh

16   claims are "plausibly and at least partly preempted by the Copyright Act." [1] Dkt. 22 at 24; *see*

17   *also* Dkt. 1 ¶ 11 ("At minimum, OEG's seventh claim for replevin (FAC ¶¶ 151–58), ninth claim

18   for criminal profiteering (*id.* ¶¶ 165–84), tenth claim for use of proceeds of criminal profiteering

19   (*id.* ¶¶ 185–97), and eleventh claim for unjust enrichment (*id.* ¶¶ 198–203) (collectively, the

20   "Preempted Claims") are completely preempted by the Copyright Act, which confers federal

21

22   _____

     [1] At oral argument, Defendants clarified that they believe other claims are also plausibly
23   preempted by the Copyright Act. Defendants cited their statement in the notice of removal that,
     "[a]t minimum," OEG's seventh, ninth, tenth, and eleventh claims are preempted. Dkt. 1 ¶ 11.
24   But Defendants have advanced no arguments as to any of OEG's other claims. Thus, the Court
     only considers those arguments Defendants have raised.

question jurisdiction and is thus a basis for removal."). They maintain that the claims are each "based on [Defendants'] alleged 'copying' of the same body of OEG business information[.]" Dkt. 22 at 4. And this information, they claim, is copyrightable. *Id.*

Defendants point to several materials that OEG claims that Defendants stole: headshots of employees; timelapse photographs of projects, drawings, and other pictorial materials; business plans; and marketing materials. *Id.* at 25; *see also* Dkt. 1 ¶ 14. Based on the information contained in the Notice of Removal and the First Amended Complaint, the Court finds that much of the material likely falls within the Copyright Act's ambit.

### a)    *Information Available to the Court*

The Court has minimal information on the details of these materials. And the Court is limited in what it can consider. *Mattel*, 441 F. Supp. 2d at 1092. "In determining whether a particular state law claim is completely preempted by federal law for purposes of removal jurisdiction, the court may look to the factual allegations in the complaint and the information included in the notice of removal." *Id.* (citing *Chesler/Perlmutter Prods., Inc. v. Fireworks Ent. Inc.*, 177 F. Supp. 2d 1050, 1058 (C.D. Cal. 2001)); *see also Touch Networks*, 2007 WL 9775634, at *2 ("The Court may only consider the factual allegations in [Plaintiffs'] complaint and the information included in Defendants' notice of removal to inform its analysis.")

Defendants argue that the Court "may also consider affidavits or other 'summary-judgment-type evidence' submitted after the defendants' motion to remand is filed." Dkt. 22 at 10 n. 9. But the cases that Defendants rely on materially differ from the one before the Court. Defendants cite *SteppeChange LLC v. VEON Ltd.,* 354 F. Supp. 3d 1033, 1040 (N.D. Cal. 2018). *SteppeChange* never relies on such evidence in assessing the parties' motion to remand. *See generally id.* The statement is only made in a portion of the order broadly discussing the legal standard for a motion to remand. *Id.*

*SteppeChange* quotes *Singer v. State Farm Mutual Automotive Insurance Co.*, 116 F.3d 373, 377 (9th Cir. 1997) for the proposition that it may consider additional materials. *Id.* In *Singer*, the Ninth Circuit explained in a diversity jurisdiction case, that if a district court cannot determine from the face of a complaint that the jurisdictional amount is satisfied, "the court may consider facts in the removal petition, and may 'require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Id.* (citing *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326 (5th Cir. 1995)).

That is not the case here. Jurisdiction is asserted based on federal question jurisdiction, not diversity. Dkt. 1 ¶ 5. Consequently, the Court need not determine the amount in controversy, and need not ask for "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Singer*, 116 F.3d at 377. Consistent with the well-pleaded complaint rule, assessing whether a complaint raises a federal question is driven by the pleading itself. Thus, the Court concludes that it may only look to the complaint and the notice of removal in determining whether the materials fall within the Copyright Act's protections. Evidence provided as part of Defendant's opposition to the motion to remand cannot be considered. *See Mattel*, 441 F. Supp. 2d at 1092.

### b)     Copyrightable Materials

In the First Amended Complaint, OEG claims that the stolen "files, records, data, information, and trade secrets" include, but are not limited to: internal ISG data about employees, finances, and processes; past, present, and potential customer information; business and marketing plans; vendor pricing information; patterns and drawings relating to low-voltage electrical panels and their components; detailed product data related to components used by ISG in production; and "information relating to . . . seals for industrial control panels, including

requirement decisions, variance conflict issues, marking directives, trainings, inspections, follow up inspection instructions, and other information." Dkt. 1-2 ¶ 77.

While it is not clear which "data, documents, records, information, and trade secrets" the claims refer to, many of the materials cited by OEG are likely protected by the Copyright Act. Dkt. 1-2 ¶ 77; *see also* Dkt. 1-2 ¶¶ 151, 165 185, and 198 (incorporating by reference all preceding allegations). For example, without seeing the actual business plans, it is difficult to assess whether OEG's business plans contain copyrightable material. But based on the information the Court does have, it is likely they do. While some business plans and customer information are "outside the scope of the Copyright Act[,]" *Terarecon, Inc. v. Fovia, Inc.*, No. C 05-4407 CW, 2006 WL 1867734, at *10 (N.D. Cal. July 6, 2006), business plans and physical models for development work can be copyrighted. *Nakada + Assocs., Inc. v. City of El Monte*, No. EDCV161467GWSPX, 2017 WL 2469977, at *1 (C.D. Cal. June 2, 2017). And to the extent a business plan or design is an "'original work[] of authorship,' such as 'pictorial' or 'graphic' works[,]" it falls under the Copyright Act's protections. *Reilly v. Wozniak*, No. CV-18-03775-PHX-MTL, 2020 WL 1033156, at *5 (D. Ariz. Mar. 3, 2020) (citing 17 U.S.C. § 102(a)(5)).

Marketing and client materials may also be copyrightable. *Lizalde v. Advanced Plan. Servs., Inc.*, 875 F. Supp. 2d 1150, 1160 (S.D. Cal. 2012) (holding that PowerPoint presentations could be copyrightable); *TD Ameritrade, Inc. v. Matthews*, No. 3:16-CV-00136-SLG, 2021 WL 3779841, at *3 (D. Alaska Aug. 25, 2021), aff'd sub nom. 2022 WL 2128897 (9th Cir. June 14, 2022) (". . . TD Ameritrade has identified numerous cases that have held that user manuals, or portions of user manuals, are protectable by copyright law. . . . And to the extent that Mr. Matthews has copied lines of computer code contained within the User Manual, computer code is explicitly protectable under the Copyright Act, and those portions of the User Manual would therefore be protectable."); *Honeywell Int'l, Inc. v. W. Support Grp., Inc.*, 947 F. Supp. 2d

1077, 1084 (D. Ariz. 2013) ("aircraft maintenance manuals can possess sufficient originality to allow copyright protection").

The same is true of project and engineering plans. *Interior Elec. Inc. Nevada v. T.W.C. Constr., Inc.*, No. 218CV01118JADVCF, 2020 WL 719410, at *4 (D. Nev. Feb. 12, 2020) ("The Copyright Office's Compendium of U.S. Copyright Office Practices recognizes in a chapter titled 'visual art works,' however, that '[t]echnical and scientific drawings include mechanical drawings, engineering diagrams, and similar works. The U.S. Copyright Office will register these types of works if they contain a sufficient amount of original pictorial or graphic material.'") (cleaned up).

Headshots or other photographs are likely also protectable. *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1076 (9th Cir. 2000) (". . . even the slightest artistic touch will meet the originality test for a photograph."); *Dhillon v. Does 1-10*, No. C 13-01465 SI, 2014 WL 722592, at *2 (N.D. Cal. Feb. 25, 2014) (conducting fair use analysis for copyright infringement suit for use of headshot of political candidate without authorization); *Sedgwick Claims Mgmt. Servs., Inc. v. Delsman*, No. C 09-1468 SBA, 2009 WL 2157573, at *2 (N.D. Cal. July 17, 2009), aff'd, 422 F. App'x 651 (9th Cir. 2011) (discussing use of copyrighted headshots).

Of course, there are some materials OEG identifies that are not copyrightable. Customer data is one such example. This data, which typically consists of things like names, addresses, or contact information, is a collection of facts. *See Feist*, 499 U.S. at 345–46, 357–58. Facts are not original and are thus not copyrightable. *See id.* at 345 ("[t]he *sine qua non* of copyright[ability] is originality" and "[o]riginal, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity."); *see also Swirsky v. Carey*, 376 F.3d 841, 849 (9th Cir. 2004) (holding that facts fail to merit protection).

1   Plaintiffs repeatedly argue that, because the works were not copyrighted, any Copyright

2   Act claim would fail. Dkt. 20 at 28; Dkt. 29 at 11. Importantly, for purposes of preemption

3   analysis, the "works at issue 'need not actually be protected, or even protectable, under the

4   Copyright Act' to fall within the 'subject matter of copyright.'" *Reilly*, 2020 WL 1033156, at *5

5   (quoting *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1189 (C.D. Cal. 2001), aff'd in part,

6   dismissed in part, 90 F. App'x 496 (9th Cir. 2003), as amended on denial of reh'g (Mar. 9,

7   2004)). Or, put another way "the shadow actually cast by the Act's preemption is notably

8   broader than the wing of its protection." *Id.* (quoting *Endemol Ent. B.V. v. Twentieth Television*

9   *Inc.*, No. CV 98-0608 ABC (BQRX, 1998 WL 785300, at *3 (C.D. Cal. Sept. 29, 1998)); *see*

10  *also Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1124 (N.D. Cal. 2001) ("WebStash

11  does not necessarily have to be actually protected by a specific copyright or even itself be

12  copyrightable; it just has to be 'within the subject matter' of the Act.") (citations omitted); *Touch*

13  *Networks*, 2007 WL 9775634, at *3 ("When determining whether a claim meets the preemption

14  requirements, the work at issue need not be protected by a copyright, it merely has to be "within

15  the subject matter" of the Copyright Act.") (citation omitted). Thus, the fact that OEG had not

16  copyrighted, or tried to copyright, the materials is not fatal to Defendants' preemption claim.

17      The Court finds that OEG's claims do include materials protected by the Copyright Act.

18  The Court moves to the second step of the analysis: whether the state law right is the same as the

19  right created by the Copyright Act.

20          2.      *Plaintiff does not assert rights equivalent to those in the Copyright Act.*

21      To determine whether a right created under state law seeks to assert rights equivalent to

22  those afforded by the Copyright Act, "a court must analyze the elements of the state-law cause of

23  action to see if the right defined by state law may be abridged by an act which in and of itself

24  would infringe one of the exclusive rights in the Act." *Firoozye*, 153 F. Supp. 2d at 1125. If there

is an "'extra element' that is required in place of or in addition to the acts of reproduction, performance, distribution, or display in order to constitute a state-law cause of action, and the 'extra element' required by state law changes the nature of the action so that it is qualitatively different from a copyright infringement claim, the state-law claim is not preempted." *Id.* (citations omitted); *see also Chesler/Perlmutter Prods., Inc. v. Fireworks Ent., Inc.*, 177 F. Supp. 2d 1050, 1057 (C.D. Cal. 2001) ("If the works at issue are within the subject matter of copyright, courts are to undertake a second step in the preemption analysis, asking whether the rights granted under state law are equivalent to any of the exclusive rights within the general scope of copyright.") (cleaned up); *Media.net Advert. FZ-LLC v. NetSeer, Inc.*, 156 F. Supp. 3d 1052, 1070 (N.D. Cal. 2016) (quoting *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1440 (9th Cir. 1993) (similar).

Importantly, the "fact that copyright preemption analysis requires a claim-by-claim inquiry . . .  indicates that the Copyright Act's complete preemptive force is somewhat narrow." *Chesler/Perlmutter Prods., Inc.*, 177 F. Supp. 2d at 1057 (cleaned up). Unlike other laws that Courts have found completely preempt state law, "state law claims are not preempted simply because they fall within the subject matter of copyright." *Id.* (citing *Balcorta v. Twentieth Century–Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000)). Rather, the Copyright Act only has "complete preemptive force" if the rights claimed under state law "could have been asserted under the Copyright Act." *Id.* And "[c]opyright law does not preempt state laws with respect to 'activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright[.]'" *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1150 (9th Cir. 2008) (quoting 17 U.S.C. § 301(b)(3)).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

a)        *OEG's Replevin Claim*

OEG brings two claims for replevin. The first seeks the return of six laptops that OEG

alleges Mick Korum bought with OEG funds and took with him when he left. Dkt. 1-2 ¶¶ 142–

50. The second asserts that Defendants took and "wrongfully retain possession of the records,

data, information, and confidential information, including trade secrets, that the Former OEG

Employees appropriated in the course of their employment with OEG and thereafter, and

retained after ceasing employment with OEG." *Id.* ¶ 154. OEG requested the "return" of the

"records, data, information, and confidential information[.]" *Id.* OEG alleges that, for the most

part, the "Former OEG Employees have not complied, with the potential exception of Brandon

Grimes, who has delivered certain files to the Court." *Id.* OEG claims that it is "entitled to

possession of its property and compensatory damages." *Id.* ¶ 157.

Defendants argue that OEG's replevin is preempted. Dkt. 22 at 26. They maintain that the

"claim is identical in practical terms to one alleging a conversion of intangible information." *Id.*

Defendants explain, "OEG's seventh claim alleges precisely the sort of interference with

intangible property rights that such courts have found preempted. *Id.* at 27. By its terms, the

claim arises out of the 'appropriat[ion] by Defendants' of OEG's 'records, data, information, and

confidential information, including trade secrets[.]'" Dkt. 22 at 27.

When a claim for conversion and a claim for replevin are brought concurrently—and the

claims merely seek damages, rather than the return of tangible property—it may be preempted by

the Copyright Act. *See, e.g.*, *Brown v. Stroud,* No. 08-CV-02348 JSW (NC), 2014 WL 1308342,

at *20 (N.D. Cal. Mar. 31, 2014), report and recommendation adopted, No. C 08-02348 JSW,

2014 WL 12639917 (N.D. Cal. July 11, 2014), aff'd sub nom. *Stroud Prods. & Enterprises, Inc.*

*v. Castle Rock Ent. Inc.*, 669 F. App'x 898 (9th Cir. 2016) ("In other words, replevin is an

available remedy for conversion, and when a complaint supports a conversion claim, it also

supports a remedy of replevin.") (citations omitted); *Shade v. Gorman*, No. C 08-3471 SI, 2009 WL 196400, at *5 (N.D. Cal. Jan. 28, 2009) ("While conversion is generally immune from preemption because it involves tangible property, conversion actions seeking only damages for reproduction of the property—not return of tangible property—are preempted by the Copyright Act.") (citation omitted).

OEG does bring a claim for conversion. Dkt. 1-2 ¶¶ 135–41. But the conversion claim focuses solely on the laptops. *Id.* The conversion claim does not request return of the files and information that OEG alleges Defendants stole. *See id.* OEG brings two replevin claims—one for the laptops and one for the other materials. *Id.* ¶¶ 142–58. Defendants focus only on the latter. Dkt 26 at 20–21.

This second replevin claim for the return of confidential information and other files is different from conversion claims that courts have found preempted. *See, e.g.*, *Shade*, 2009 WL 196400, at *5; *Firoozye*, 153 F. Supp. 2d at 1130 ("However, while a claim for conversion typically involves tangible property and thus may be immune from preemption, where a plaintiff is only seeking damages from a defendant's reproduction of a work—and not the actual return of a physical piece of property—the claim is preempted."). For example, Defendants cite *Levy*, 658 F. Supp. 3d at 907. There, a video production company sued an advertising agency and video producer, asserting state-law claims for conversion, misappropriation, unjust enrichment, and breach of contract, arising from the defendants' alleged copying of "entertainment-magazine style video series." *Id.* at 905. The defendants argued that because Levy's conversion claim was based on an intangible, rather than tangible, piece of intellectual property, it sought only to evince rights equivalent to those protected by copyright. *Id.* at 910. The court explained that the "dispositive inquiry in a copyright-preemption analysis of conversion claims thus appears to be whether the property at issue is tangible or intangible." *Id.* at 911 (citing *Bokenfohr v. Gladen*,

826 F. App'x 485, 486 (9th Cir. 2020)). Because there was nothing tangible to return—and plaintiff sought only damages—the court concluded that "the heart of Levy's conversion claim mirrors exclusive rights protected by the Copyright Act" and was preempted. *Id.*

Defendants ask the Court to reach a similar conclusion on OEG's second replevin claim. Dkt. 22 at 270 ("OEG's seventh claim alleges precisely the sort of interference with intangible property rights that such courts have found preempted."). To be sure, OEG requests damages, but it also demands the return of tangible items. Dkt. 1-2 ¶ 157; Dkt. 29 at 14 ("As set forth in the Motion, replevin claims like OEG's seventh claim, which seek the return of the tangible materials at issue and are not preempted by the Copyright Act."). As Defendants themselves admit, OEG's complaint notes that the information was downloaded onto "an external USB hard drive" and "at least one Defendant 'printed copies of a significant amount of OEG's confidential information.'" Dkt. 22 at 27–28. OEG alleges that Defendant Brandon Grimes also "compiled eight 'SD cards'" of 'OEG records, data, and information, and trade secrets, which it appears included project files[.]'" Dkt. 1-2 ¶ 175. OEG thus demands the return of tangible property.

Defendant also claims that, because the documents remained in OEG's possession (in that the stolen information was not removed from OEG's servers entirely), OEG fails to allege that Defendants "ever actually deprived it of any such information." Dkt. 22 at 28. Defendants cite *McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1022 (C.D. Cal. 2020). *Id.* There, actress-activist Rose McGowan sued Harvey Weinstein, the now infamous movie producer, asserting claims including civil violation of the Racketeer Influenced and Corrupt Organizations Act, violation of the Federal Wiretap Act, and fraud. 505 F. Supp. 3d at 1006–07, 1009. The case "concerns Defendants' alleged efforts to prevent McGowan from publicly disclosing [in her book] that Weinstein raped her." *Id.* at 1006–07.

1    McGowan's ninth claim, for conversion, argued that "Defendants are liable for

2    conversion because they 'planned to and did implement a scheme to obtain as much of [her

3    book] as possible before the book was published, causing interference with [McGowan]'s

4    possession of the confidential manuscript.'" *Id.* at 1021. Defendants in turn argued that

5    McGowan had failed to allege "a complete dispossession of the manuscript" and the claim was

6    preempted by the Copyright Act. *Id.* The court held that "the essence of [McGowan's] claim is

7    that Defendants made an unlawful reproduction of her manuscript . . . and interfered with her

8    right to be the only person in possession of a copy. . . . In other words, Defendants violated

9    McGowan's exclusive rights to decide whether a copy could be created or to whom such a copy

10   could be distributed— 'the essence of a claim for copyright infringement.'" *Id.* at 1022 (citation

11   omitted). Because McGowan had failed to "allege a theory of conversion" beyond that

12   Defendants "obtain[ed]" a copy of the book, the court found the claim preempted. *Id.*

13   But OEG's request for the return of its corporate materials is different—even if they still

14   retain some copy of the materials. And importantly, it is their title to this property that they seek

15   to vindicate. Even though "replevin and conversion are 'concurrent remedies for a wrongful

16   taking of goods[,'"] they are not identical. *Bensch v. Dixon*, 178 Wash. App. 1011, 2013 WL

17   6244521, at *2 n.2 (Div. 3 2013) (unpublished) (citation omitted). "[R]eplevin is usually an

18   action to recover property, whereas conversion allows recovery of the value of the property when

19   recovery of the specific property is not possible." *Id.* (citation omitted). Unlike in *McGowan*,

20   OEG is asking to recover actual property. Dkt. 1-2 ¶ 157. It does not seek to vindicate a right

21   equivalent to those protected under the Copyright Act, such as McGowan's claim that Weinstein

22   had violated her "exclusive rights to decide whether a copy could be created or to whom such a

23   copy could be distributed." *McGowan*, 505 F. Supp. 3d at 1022. OEG seeks replevin to recover

24

tangible property and this Court will analyze its claim as such—despite Defendants' urging otherwise. Dkt. 1-2 ¶ 157; Dkt. 22 at 26–28.

"A replevin action is essentially one to determine title to, or right of possession of, personal property." *Bensch*, 2013 WL 6244521, at *2 (quoting *Apgar v. Great Am. Indem. Co.*, 171 Wn. 494, 498, 18 P.2d 46 (1933)). The party bringing a replevin action must show:

> (a) That the plaintiff is the owner of the property or is lawfully entitled to the possession of the property by virtue of a special property interest . . .;
>
> (b) That the property is wrongfully detained by defendant;
>
> (c) That the property has not been taken for a tax, assessment, or fine pursuant to a statute and has not been seized under an execution or attachment against the property of the plaintiff, or if so seized, that it is by law exempt from such seizure; and
>
> (d) The approximate value of the property.

*Graham v. Notti*, 147 Wn. App. 629, 635, 196 P.3d 1070 (2008) (citing RCW 7.64.020(2)). A plaintiff seeking replevin must be "able to prevail on the strength of her title or right, regardless of the defendant's title or right to possession." *Id.* (citing *Crystal Recreation, Inc. v. Seattle Ass'n of Credit Men*, 34 Wn.2d 553, 558, 209 P.2d 358 (1949)).

Though Washington courts have not considered the Copyright Act's potential preemptive power over replevin claims, they have considered how replevin and trade secret laws interact. *See, e.g.*, *SEIU Healthcare Nw. Training P'ship v. Evergreen Freedom Found.*, 5 Wn. App. 2d 496, 502–03, 427 P.3d 688 (2018). For example, one court explained, "[t]he replevin statute expressly provides that its remedies '*are in addition to any other remedy available to the plaintiff.*' . . . This . . . evinces legislative intent that statutory replevin is always available to a qualifying plaintiff. It follows that a plaintiff who has alleged . . . misappropriation of a trade secret does not thereby lose the right to seek replevin of property owned by the plaintiff and wrongfully detained by the alleged misappropriator." *Id.* at 503 (cleaned up) (emphasis in

1   original). The court described the replevin statute's words as "strong antipreemptive language."

2   *Id.* Applied to copyright claims, replevin should remain available to a plaintiff requesting the

3   return of property "owned by the plaintiff and wrongfully detained" by a defendant. *Id.*

4          Thus, to the extent that OEG seeks return of tangible property, "this constitutes an extra

5   element that cannot be preempted as the Copyright Act provides no such remedy." *Brown*, 2014

6   WL 1308342, at *22 (citation omitted) (discussing both replevin and conversion claims). Here,

7   because OEG requests the return of tangible property, an extra element is present. This extra

8   element qualitatively changes the claim from one sounding in copyright to one demanding the

9   return of tangible property. The Court finds that Defendants have failed to show that OEG's

10  replevin claim is preempted.

11                    *b)    OEG's Criminal Profiteering Claim*

12         Defendants next argue that OEG's claims for criminal profiteering are preempted. OEG

13  claims that Defendant Former Employees "made unauthorized use or copies of OEG records,

14  information, data, and trade secrets"—actions which constitute theft under Washington law.

15  Dkt. 21-1 ¶¶ 165–75. Plaintiffs also urge that the actions constituted a "pattern of criminal

16  profiteering activity" under Washington law. *Id.* ¶¶ 177–80.

17         Washington law defines theft as:

18         (a) To wrongfully obtain or exert unauthorized control over the property or
           services of another or the value thereof, with intent to deprive him or her of such
19         property or services; or

20         (b) By color or aid of deception to obtain control over the property or services of
           another or the value thereof, with intent to deprive him or her of such property or
21         services; or

22         (c) To appropriate lost or misdelivered property or services of another, or the
           value thereof, with intent to deprive him or her of such property or services.

23  RCW 9A.56.020. Subsection (a) is often called theft by taking while subsection (b) is known as

24  theft by deception. *State v. Southard*, 49 Wn.App. 59, 62 741 P.2d 78 (1987).

ORDER GRANTING MOTION TO REMAND - 26

A plaintiff who seeks to prevail on a claim of criminal profiteering under Washington law must prove that the alleged profiteers engaged "in at least three acts of criminal profiteering, . . . . In order to constitute a pattern, the three acts must have the same or similar intent, results, accomplices, principals, victims, or methods of commission, or be otherwise interrelated by distinguishing characteristics including a nexus to the same enterprise, and must not be isolated events." *State v. Barnes*, 85 Wn. App. 638, 649, 932 P.2d 669 (1997), as amended on denial of reconsideration (Apr. 18, 1997) (quoting RCW 9A.82.010(15)). Theft is one such criminal act under the statute. RCW 9A.82.010(4)(e).

The Washington Supreme Court has held that theft is not preempted by the Copyright Act. In *State v. Smith*, a college student deceived a software company into sending him a software package and instruction manual, which he copied prior to returning to the company. 115 Wn. 2d 434, 437, 798 P.2d 1146 (1990). The materials were copyrighted. *Id.* at 435. After an investigation into the incident, Defendant was charged with first degree theft. *Id.* at 436. Before trial, the defendant moved to dismiss, arguing that the Copyright Act preempted the state claims against him. *Id.* The trial court denied the motion. *Id.* The jury found him guilty, and he appealed. *Id.* at 437–38.

The Washington Supreme Court examined whether the State was barred from prosecuting Defendant because of preemption. *Id.* The court held that theft not only demanded an "extra element," but also that the "extra element" changed "the nature of the action so that it is qualitatively different from a copyright infringement claim." *Id.* at 440 (collecting cases). The court explained that "[p]roof that defendant wrongfully or deceptively obtained the computer materials in the present case includes elements different from those comprising a federal copyright violation." *Id.* Because the State was prosecuting the manner in which the defendant had obtained the materials, rather than the mere fact that he had copied them, the

nature of the cause of action had qualitatively changed. *Id.* "In fact," the court concluded, "given that the duplicated materials are used under Washington's theft statute only as proof of an intent to deprive, it would be irrelevant whether they were copyrighted." *Id.*

Here, just as in *Smith*, even though some of the items stolen may be protected by the Copyright Act, the nature of the cause of action is "qualitatively" different from that protected by the law. *See id.* OEG's First Amended Complaint makes this clear. The complaint leads by stating that the Former OEG Employees "were parties to an effort to *steal* a massive quantity of data, records, confidential information, and trade secrets[.]" Dkt. 1-2 at 2 (emphasis added). And throughout the complaint, OEG returns to this fact, which underlies each of their claims. *See, e.g., id.* at 3 ("stealing more than 40,000 distinct documents and records"), 12 ("began . . . stealing OEG's data, records, documents, and confidential information, including trade secrets"), 22 ("The foregoing theft and retention of confidential information from OEG"). In its criminal profiteering claim, OEG restates these allegations, and elaborates, "[by] downloading these files, Rick Morse made unauthorized use and copies of OEG records, information, data, and trade secrets under RCW 9A.56.010(6) for his benefit and that of K4 Electrical. His actions constituted theft under RCW 9A.56.020." *Id.* ¶ 167. OEG makes similar allegations against Mick Korum, Nick Koruum, and Brandon Grimes. *Id.* ¶¶ 170–78.

To succeed, OEG will need to satisfy the requirements of Washington's theft statute. OEG will need to show that the Defendants "wrongfully obtain[ed] or exert[ed] unauthorized control" over OEG's "property or services" with the "intent to deprive" OEG of such "property or services." RCW 9A.56.020(a). Alternatively, OEG must show that Defendants stole the materials "[b]y control or aid of deception[.]" RCW 9A.56.020(b). And in doing so, OEG must show that Defendants intended to "deprive" OEG of its property. RCW 9A.56.020. As defined

by Washington statute, deprivation includes "unauthorized use or an unauthorized copy of records, information, data, trade secrets, or computer programs . . . ." RCW 9A.56.010(5).

While this definition of deprivation echoes of the Copyright Act's protections against copying and unauthorized use, it is not the same. Not only does a theft claim require proof of an "additional element," it is also "qualitatively" different from a copyright claim. Like *Smith*, "[u]nder the theft statute as applied in this case, [OEG] is prosecuting the *manner in which* defendant obtained the computer materials rather than the fact he copied them." *See Smith*, 115 Wn. 2d at 440 (emphasis added). Thus, just as in *Smith*, the "[p]roof that defendant wrongfully or deceptively obtained the computer materials in the present case includes elements different from those comprising a federal copyright violation." *Id.* OEG's claim for criminal profiteering is not completely preempted by the Copyright Act.

### c)    OEG's Unjust Enrichment Claim

Finally, Defendants argue that OEG's unjust enrichment claims are preempted. Dkt. 22 at 29–30. Defendants maintain that OEG's unjust enrichment claim "is based on Defendants' alleged copying of OEG's business documents," thus asserting "a right equivalent to copyright[.]" *Id.* at 30.

Defendants correctly point out that "claims for unjust enrichment are . . . generally preempted." *Id.* at 29 (cleaned up). Defendants rely mainly on *Del Madera Properties v. Rhodes & Gardner, Inc.*, 820 F.2d 973 (9th Cir. 1987).[2] There, a joint venture, Del Madera, sued a group of subdivision developers for copyright infringement, unjust enrichment, and unfair competition. *Id.* at 975. Del Madera alleged that the developers misappropriated its time and effort and used a copyrighted tentative map to develop a property previously owned by the joint venture. *Id.* After

---

[2] Notably, unlike *Del Madera*, OEG has not copyrighted these materials, nor has it brought a copyright claim against the Defendants. *See generally* Dkt. 1-2.

three days of trial, but before Del Madera rested its case, the district court dismissed Del

Madera's unfair competition and unjust enrichment claims. *Id.* The jury returned a special

verdict on the copyright claim, finding that Del Madera held a valid copyright, but that the

copyright had not been infringed. *Id.* Del Madera appealed. *Id.*

        On review, Del Madera maintained that its federal copyright claim did not preempt its

state-law claims for unfair competition and unjust enrichment. *Id.* at 976. Thus, Del Madera

argued, the district court had erred in "dismissing these claims on this ground." *Id.* The Ninth

Circuit disagreed. *Id.* at 977. On the unjust enrichment claim, the Ninth Circuit explained:

> The foundation of Del Madera's unjust enrichment claim is its contention that the
> defendants violated an implied promise, based on the parties' relationship, not to
> use the Tentative Map and supporting documents. But an implied promise not to
> use or copy materials within the subject matter of copyright is equivalent to the
> protection provided by section 106 of the Copyright Act. Therefore, this portion
> of Del Madera's unjust enrichment claim is also preempted.

*Id.* And, in the wake of this decision, courts have repeatedly found that "unjust enrichment is

essentially equivalent to a claim of copyright infringement and is therefore preempted." *Montz v.

Pilgrim Films & Television, Inc.*, 649 F.3d 975, 976–77 (9th Cir. 2011) (citing *Del Madera*, 820

F.2d at 977).

        But not every unjust enrichment claim for the appropriation of copyrightable material is

preempted. The extra element analysis still applies. For example, courts in the Ninth Circuit have

repeatedly found that, where a breach of an implied-in-fact contract is also pled, this extra

element is enough to prevent preemption. *Grosso v. Miramax Film Corp.*, 383 F.3d 965, 968 (9th

Cir. 2004) (implied-in-fact contract is not preempted by the Copyright Act); *Nw. Home

Designing Inc. v. Sound Built Homes Inc.*, 776 F. Supp. 2d 1210, 1216–17 (W.D. Wash. 2011)

("A claim for unjust enrichment is not preempted by the Copyright Act where it alleges an extra

element that transforms the action from one arising under the ambit of the federal statute to one

sounding in contract."); *Selby v. New Line Cinema Corp.*, 96 F. Supp. 2d 1053, 1059 (C.D. Cal. 2000) ("Courts . . . have concluded that a defendant's very promise to refrain from using the plaintiff's ideas or copyrighted materials without compensation provides the extra element."); *Doody v. Penguin Grp. (USA) Inc.*, 673 F. Supp. 2d 1144, 1166 (D. Haw. 2009) (similar).

For example, in *Grosso v. Miramax Film Corporation*, the Ninth Circuit, still citing *Del Madera*, explained that an alleged violation of an implied-in-fact contract could defeat preemption. 383 F.3d at 968. The court found that "his claim for breach of an implied-in-fact contract is not preempted by the Copyright Act, because it alleges an extra element that transforms the action from one arising under the ambit of the federal statute to one sounding in contract." *Id.* "That implied-in-fact promise was the 'extra element' distinguishing the state law claim from a copyright claim, and the death of the Grosso defendants' preemption argument." *Attachmate Corp. v. Sentry Ins. a Mut. Co.*, No. C08-1035RAJ, 2009 WL 1547264, at *2 (W.D. Wash. Jan. 13, 2009) (citing *Grosso*, 383 F.3d at 968).

*Wimer v. Reach Out Worldwide Inc.* provides a more recent example. No. CV 17-1917-RSWL-ASX, 2017 WL 5635461 (C.D. Cal. July 13, 2017). There, the court concluded it did not have jurisdiction because plaintiff's state-law claims were not preempted by the Copyright Act. *Id.* at *2. In analyzing plaintiff's unjust enrichment claim, the court explained, "[A] closer reading of Plaintiff's unjust enrichment claim shows that Plaintiff is not claiming violation of an implied promise not to use or copy the Works; rather, Plaintiff alleges Defendants benefitted from the Works without compensating him." *Id.* at *4. This "'extra element'—of an implied promise to compensate Plaintiff—'transforms the action from one arising under the ambit of the federal statute to one sounding in contract.'" *Id.* (citing cases). And, the court cautioned:

> It is true that the Complaint also alleges that Defendants were unjustly enriched by profiting from the Works without Plaintiff's consent and without legal rights to the works. . . . At first, this allegation seems equivalent to the Copyright Act's

> exclusive right to reproduce the work or distribute copies, 17 U.S. § 106(1),(2).
> Were the Court to subscribe to this reasoning—particularly in a case like this
> where it is unclear whether the plaintiff even has a valid copyright registered—
> any time a party mentioned that the other party "benefitted" from a potentially
> copyrightable work, preemption would be the only result and would invariably
> swallow up viable state law claims.

*Id.* (cleaned up). The Defendants here advocate a similar theory. Dkt. 22 at 22–23. And this Court echoes the same cautions as the *Wimer* court: were the Court to adopt Defendants' theory of complete preemption, it would "invariably swallow up viable state law claims." *Wimer*, 2017 WL 5635461, at *4.

Similarly, OEG maintains that its unjust enrichment claim contains another element: theft. Dkt. 29 at 16 ("Defendants *de minimis* arguments regarding OEG's claims for unjust enrichment once more ignores OEG's actual claim, which argues that Defendants' enrichment is unjust because they *stole* the property from OEG's premises and servers, not because they merely copied documents."); Dkt. 20 at 27–28 ("[I]t is not the mere fact that Defendants downloaded or copied OEG's data—it is the manner in which they acquired it (i.e., theft) which makes the situation unjust and entitles OEG to restitution."). OEG thus urges the Court to find that its unjust enrichment claim is "qualitatively different" from a copyright claim. Dkt. 29 at 16. The Court agrees.

Just as a claim for unjust enrichment based on a breach of contract contains an extra element, so too does a claim for unjust enrichment rooted in theft. "A claim for breach of contract has the 'extra element' of an alleged exchange of promises/representations between the parties." *Nw. Home Designing Inc.*, 776 F. Supp. 2d at 1216. Thus, "the claim depends on more than the mere act of copying or distribution regulated by the federal Copyright Act, and is on that basis not preempted by Section 301(a)." *Id.*

Similarly, a claim arising from theft has the "extra element" of proving theft under Washington law. This qualitatively changes the nature of the claim. Thus, "the claim depends on more than the mere act of copying." *Nw. Home Designing Inc.*, 776 F. Supp. 2d at 1216. Like *Smith*, "[u]nder the theft statute as applied in this case, [OEG] is prosecuting the *manner in which* defendant obtained the computer materials rather than the fact he copied them." 115 Wn. 2d at 440. Accordingly, the "[p]roof that defendant wrongfully or deceptively obtained the computer materials in the present case includes elements different from those comprising a federal copyright violation." *Id*. Defendants have not shown that OEG's unjust enrichment claim is preempted.

## D.    OEG's Gravamen Argument

OEG argues throughout its motion to remand that the Court should not conduct a claim-by-claim analysis but should instead focus on the "true gravamen of the action." Dkt. 20 at 17. The language and analysis that OEG urges the Court to adopt comes from *Karambelas v. Hughes Aircraft Co.*, 992 F.2d 971, 973 (9th Cir. 1993). There, the Court held, "in the area of complete preemption[,] if the true gravamen of the action is a federal claim—such as deprivation of pension plan benefits—the plaintiff cannot avoid preemption by pleading a purported state law claim." *Id.* (citing *Sorosky v. Burroughs Corp.*, 826 F.2d 794, 799–800 (9th Cir. 1987)). OEG urges that "[t]he inverse is also true—if the true gravamen of the action is not a federal claim, complete preemption does not apply[.]" Dkt. 20 at 17. Defendants claim this language is mere dicta. Dkt. 22 at 17 n.15. Defendants characterize the analysis as "at most a shorthand rhetorical flourish[.]" *Id.*

It is true that courts in this circuit have relied on *Karambelas*' gravamen language, suggesting it is something more than mere dicta. Dkt. 29 at 9–10 (citing cases). But these are all cases which deal with questions under other statutes, not the Copyright Act. *See, e.g.*, *Sikiyan v.*

*Morris*, No. CV16-1699 PSG (JCX), 2016 WL 3131022, at *3 (C.D. Cal. May 131, 2016) (citing *Fafara v. Am. States Life Ins. Co.*, 976 F. Supp. 1368, 1371 (D. Or. 1997)) (ERISA preemption); *Graham v. Cingular Wireless LLC*, No. C05-1810 JLR, 2007 WL 30871, at *8 (W.D. Wash. Jan. 4, 2007) (ERISA preemption); *Izmaylov v. Save Mart Supermarkets, Inc.*, No. CIV. 2:15-00323 WBS, 2015 WL 1540664, at *3 (E.D. Cal. Apr. 7, 2015) (FMLA preemption). None of the complete preemption cases in this circuit applying the Copyright Act rely on the language.

Though the Court does not follow *Karambelas*' path, the Court's conclusion is the same as if it had chosen to conduct the "gravamen" analysis. The "heart and soul" of OEG's complaint sounds in theft, not copyright. Regardless of the potential copyright protection for any of the materials, OEG's main concern remains the theft of those materials. As they explained in their motion to remand, "This is not a case about materials placed in the public domain which were then infringed upon or distributed without permission. Rather, this is a case about bad actors surreptitiously stealing files directly from their former employer's computer systems to set up a competing entity." Dkt. 20 at 18–19. That is the gravamen of the complaint.

Thus, regardless of whether the Court follows OEG's chosen framework or that of Defendants, the Court finds that OEG's claims are not preempted by the Copyright Act. The motion to remand is GRANTED.

## V.    DEFENDANT'S MOTION TO SEAL

Defendants have moved to seal in order to file unredacted versions of their opposition to OEG's motion to remand. Dkt. 24 at 2. Defendants submit OEG's interrogatory responses and a declaration as well. *Id.* Defendants argue that the documents are necessary for their opposition to the motion to remand. *Id.* Defendant claim that the proposed filings contain information protected under the state court's stipulated protective order. *Id.* at 4. They explain that they only filed this motion because they believe "the State Court SPO purports to require as much." *Id.* In

the same breath, Defendants note that they "do not believe that OEG's interrogatory responses deserve to be sealed." *Id.* Plaintiff does challenge Defendants' motion, but ultimately agrees that the covered materials were appropriately filed under seal. Dkt. 31 at 2–4.

When considering a motion to seal, the Court starts "with a strong presumption in favor of access to court records." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016). Typically, under the "compelling reasons" standard, "a court may seal records only when it finds a compelling reason and articulates the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.* at 1096–97 (cleaned up). In general, "'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006).

Though the Court is remanding the action, it finds that the documents remaining on the closed docket merit protection. The dockets contain information that may release some of OEG's trade secrets. *See* Dkt. 31 at 4–5. Thus, the Court GRANTS Defendants' motion to seal.

## VI.    CONCLUSION

For the foregoing reasons, the Court does not have jurisdiction in this case. The Court ORDERS that:

1. Pursuant to 28 U.S.C. § 1447(c), all further proceedings in this case are REMANDED to the Superior Court for Clark County in the State of Washington;

2. The Clerk shall mail a certified copy of this Order to the Clerk of the Court for the Superior Court for Clark County, Washington;

3. The Clerk shall transmit the record herein to the Clerk of the Court for the Superior Court for Clark County, Washington; and

4.      The Clerk shall close this case.

Dated this 31st day of January, 2025.

_____
Tiffany M. Cartwright
United States District Judge

ORDER GRANTING MOTION TO REMAND - 36